UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAWN SINGLETON,

        Plaintiff,

v.

UNITED STATES DEPARTMENT
OF VETERANS AFFAIRS,

        Defendant.
_____/

Case No. 12-14776
Hon. Lawrence P. Zatkoff

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on August 15, 2013.

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter is before the Court on Defendant's Motion to Dismiss [dkt 6]. The parties have fully briefed the Motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process will not be aided by oral argument. Therefore, pursuant to E.D. Mich. Local R. 7.1(f)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted, without the Court entertaining oral argument. For the reasons that follow, Defendant's Motion is GRANTED.

### II. BACKGROUND

Plaintiff claims that, while she was crossing Woodward Avenue in Detroit on March 8, 2012, she was struck by a car driven by James Ellis Hodgson ("Hodgson"). Hodgson is not a party to this suit. Nevertheless, Plaintiff maintains that, on the day of the incident, Hodgson had received medical treatment

1

for her eyes—including pupil dilation—at the John D. Dingell Veterans Affairs Medical Center ("VAMC"). Defendant owns and/or operates the VAMC.

According to Plaintiff, Defendant owed her a duty to warn Hodgson not to drive or prevent him from driving altogether. On this basis, Plaintiff filed suit against Defendant under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, claiming that she suffered injuries as a result of the incident. Plaintiff seeks $10 million in damages. Defendant thereafter filed the instant motion seeking dismissal of the complaint under Fed. R. Civ. P. 12(b)(6).

In its Motion, Defendant argues that dismissal is warranted because Plaintiff had no relationship to the VAMC and, as such, Defendant had no legal duty to her. Additionally, Defendant argues that Plaintiff has not shown how her injuries are traceable back to Defendant through Hodgson, and that Plaintiff therefore lacks standing.

### III. LEGAL STANDARD

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of a party's claims. The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in that party's favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992). While this standard is decidedly liberal, it requires more than a bare assertion of legal conclusions. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). A party must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the party pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the alleged misconduct." *Id.* at 556. *See also Ashcroft v. Iqbal*, __ U.S. ___, 129 S. Ct. 1937, 1953 (2009).

2

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2000).

## IV. ANALYSIS

The Court finds that Plaintiff has failed to state a claim upon which the Court may grant relief. First, Plaintiff has failed to set forth "[f]actual allegations" sufficient "to raise a right to relief above the speculative level" so that her claim is "plausible on its face." *Twombly*, 550 U.S. at 555, 570. She states that Hodgson had eye treatment at the VAMC, and shortly after leaving there, he struck Plaintiff with his car while she was crossing the street. Based on this—and little else—Plaintiff claims that Defendant owed her a duty to warn Hodgson about the dangers of driving and to take measures to prevent him from doing so. Yet, without having been present for Hodgson's treatment, Plaintiff fails to provide any factual basis for her to conclude that the treatment Hodgson received that day impacted his ability to operate a vehicle and, evening assuming as much, that Defendant did, in fact, fail to provide any required warning to Hodgson. This, in short, amounts to merely "a blanket assertion of entitlement to relief," *Id.*, that is insufficient to support Plaintiff's Complaint.

Second, even drawing all inferences in favor of Plaintiff, the Court finds that she nevertheless fails to plead sufficient factual allegations to support a finding that Defendant owed her a legal duty to warn Hodgson about, or take steps to prevent him from, operating a vehicle.

Under Michigan law,[1] a plaintiff alleging negligence must demonstrate, among other things, a duty owed to the plaintiff by the defendant. *Case v. Consumers Power Co.*, 463 Mich. 1, 6, 615 N.W.2d 17, 20 (2000). The issue of "whether a duty exists is one of law for the court's resolution." *Welke v.*

---

[1] The Court applies Michigan law in this case because "[t]he extent of the [government's] liability under the FTCA is generally determined by reference to state law." *Molzof v. United States,* 502 U.S. 301, 304-05, 112 S.Ct. 711, 116 L.Ed.2d 731 (1992); *see also Harris v. United States,* 422 F.3d 322, 326–27 (6th Cir. 2005).

3

*Kuzilla,* 144 Mich.App. 245, 375 N.W.2d 403 (1985).  Duty "arises from the relationship of the parties and involves a determination of whether the defendant has any obligation to avoid negligent conduct for the benefit of the plaintiff."  *Duvall v. Goldin,* 139 Mich.App. 342, 362 N.W.2d 275, 277 (1984).  The existence of a duty is a separate inquiry from "the nature or extent of the actor's obligation" with respect to that duty. *Id.*

"Generally, a party has no duty to protect another who is endangered by a third person." *Shepard v. Redford Cmty. Hosp.*, 151 Mich.App. 242, 245, 390 N.W.2d 239, 241 (1986); *see also Welke*, 375 N.W.2d at 405.  There is an exception to this general rule where the defendant has a "special relationship with either the dangerous person or the potential victim."  *Shepard*, 390 N.W.2d at 241.  *See also Welke,* 375 N.W.2d at 405; *Duvall,* 362 N.W.2d at 278.  Even if such a relationship exists, however, it does not necessarily require the imposition of a duty.  *In re Certified Question from Fourteenth Dist. Court of Appeals of Texas*, 479 Mich. 498, 515, 740 N.W.2d 206, 216 (2007).  Whether a duty exists also depends upon "the foreseeability that the actor's conduct would create a risk of harm to the victim." *Duvall*, 362 N.W.2d at 278.

The question of whether a physician owes a duty of care to third parties for the actions of the physician's patient is far from being well-settled in Michigan.  Plaintiff relies on two decisions by the Michigan Court of Appeals—*Duvall* and *Welke*, *supra*—to argue that a special relationship exists to warrant an exception to the general rule against imposing a duty on a party to protect another endangered by a third person.

In *Duvall*—which was "limited to [its] narrow facts," 362 N.W.2d at 279—the Michigan Court of Appeals found that a psychiatrist had a duty to a third party injured in a car accident caused by the psychiatrist's patient.[2]  The court found that the psychiatrist in that case had a special relationship with the

---

[2] Even in *Duvall*, 362 N.W.2d at 279, the court "decline[d] to find a duty in every instance involving a physician, his patient and an unidentifiable third party. [It did] not intend to make physicians highway accident insurers."

4

patient who caused the harm to the plaintiff. As to foreseeability, the court also found it foreseeable, based on the nature of the patient's condition (epilepsy), that a doctor's failure to warn against, diagnose, or properly treat such a condition may create a risk of harm to a third party. *Id*. Similarly, in *Welke*, 375 N.W.2d at 406, the court found that a duty existed for the benefit of a third party where a doctor injected his patient with an unknown substance, and then allowed the patient to drive the doctor's vehicle. *Id*. at 406. The patient subsequently killed another individual while driving. *Id*. *Duvall* and *Welke*, however, are factually distinguishable from this case.

In *Duvall*, the court found the harm in question foreseeable based on the nature of patient's condition—epileptic seizures.[3] Indeed, it is beyond question that a patient who experiences epileptic seizures and chooses to drive would create a risk to other drivers. The "condition" of dilated pupils, however, is hardly akin to the prospect of enduring a random epileptic seizure. Indeed, pupil dilation simply does not invariably jeopardize one's ability to control bodily function. Moreover, the condition of Hodgson's eyes would have certainly been known to him at the time he chose to drive. Epileptic seizures, however, can at any time cause an individual to behave uncontrollably. That Hodgson's pupils may have been dilated is simply not enough to make it foreseeable to Defendant that Hodgson was likely to endanger Plaintiff.

*Welke* is also in stark contrast to the circumstances in this case. There, the defendant doctor lent his car to his patient after injecting the patient with some unknown substance, and the patient then caused an accident resulting in injuries to the plaintiff. The doctor, of course, could have prevented the patient's use of the car. Here, Defendant did not own the vehicle that Hodgson drove, nor is there any indication

---

[3] Epilepsy is a brain disorder in which clusters of nerve cells, or neurons, in the brain sometimes signal abnormally. Neurons normally generate electrochemical impulses that act on other neurons, glands, and muscles to produce human thoughts, feelings, and actions. In epilepsy, the normal pattern of neuronal activity becomes disturbed, causing strange sensations, emotions, and behavior, or seizures and seizure-like behavior that includes convulsions, muscle spasms, and loss of consciousness. A person having a severe seizure may cry out, fall to the floor unconscious, twitch or move uncontrollably, drool, or even lose bladder control. *See* "Seizures and Epilepsy: Hope Through Research," available at
http://www.ninds.nih.gov/disorders/epilepsy/detail_epilepsy.htm#241913109

that Defendant had any relationship with Hodgson or could have in any way prevented Hodgson from driving.

Notwithstanding these factual distinctions, *Duvall* and *Welke* were also founded on rulings that have since been overturned or abrogated by statutory enactment. The courts in both cases relied on another Michigan Court of Appeals case, *Davis v. Lhim*, 335 N.W.2d 481 (Mich. Ct. App. 1983). In *Davis*, the court adopted the reasoning first set forth in *Tarasoff v. Regents of University of California*, 17 Cal. 3d 425 (Cal. 1976), where the court held that a psychiatrist owes a duty of reasonable care to a person who is foreseeably endangered by his patient. The Michigan Supreme Court, however, reversed *Davis* on other grounds in *Canon v. Thumudo*, 422 N.W.2d 688 (Mich. 1988), and found that, on the basis of its holding, it did not need to decide whether a duty to warn should be imposed upon mental health professionals—casting doubt on whether such a duty exists in Michigan. *Id.* at 700.

Moreover, a year after *Davis*, the Michigan legislature adopted Mich. Comp. Law § 330.1946(1). That statute expressly rejected any duty for mental health professionals to warn or protect third persons. *Id.* Under the statute, the only duty owed is a duty to warn in situations where a patient communicates a threat to his mental health professional and the object of the threat is reasonably identifiable. *See Swan v. Wedgwood Christian Youth & Family Servs., Inc.*, 230 Mich. App. 190, 198, 583 N.W.2d 719, 723 (1998). As such, Plaintiff's suggestion—that Michigan law relating to mental health professionals supports imposing a duty on Defendant to protect Plaintiff—is misplaced. *See Gragg v. Auburn Counseling Servs.*, Case Nos. 222882 & 228860; 2002 Mich. App. LEXIS 950, *2–3 (June 25, 2002) (noting that plaintiff's reliance on *Duvall* flawed because that decision predated the adoption of the statute, and holding that defendants who provided psychiatric care to a patient, who was involved in a car accident, did not have a duty to a person killed in the car accident). The Court finds no basis to subject

health professionals as a whole to a greater risk of liability than mental health professionals, or to "make physicians highway accident insurers," *Duvall*, 362 N.W.2d at 279.

Therefore, to the extent that Plaintiff relies on *Davis* and its progeny to support the existence of a duty, Plaintiff's claim must fail.  Having determined this, the Court need not address Defendant's argument regarding Plaintiff's standing to bring suit.

## V.  CONCLUSION

Accordingly, and for the reasons set forth above, it is HEREBY ORDERED that Defendant's Motion to Dismiss [dkt 6] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Date:   August 15, 2013                                              s/Lawrence P. Zatkoff  
                                                                     LAWRENCE P. ZATKOFF  
                                                                     U.S. DISTRICT JUDGE